The opinion of the court was delivered by
Bermudez, O. J.
The question presented is simply: whether an order of sale procured by an executrix to pay debts can be rescinded on a rule, at the instance of a first mortgage creditor who claims to be aggrieved thereby and who seasonably asserts the right to proceed via exeeutira, under his mortgage contract, which contains the clause de non alienando.
Adam Thompson died on August 8, 1889. His executrix qualified on the 14th, following. Three days after she prayed for an inventory, and on the 20th following, procured an ex parte order of sale of all the property belonging to the succession, the movables, cash and the immovables, part cash and part on credit, one and two years, including real estate, on which the Louisiana National Bank had a mortgage to secure a claim of §15,700, the act containing the pact de non alienando; of this claim $6,200 had matured on June 17, 1889, and $9,500 on July 5, 1889.
On August 30, the bank took a rule to rescind the order of sale obtained by the executrix, on the ground that it had'been made without notice to it, previous to the return of the inventory, before thirty days had elapsed since her appointment; that it directs the sale to be made part cash and part on credit; that it subjects the sale to the inventory appraisement.
The executrix excepted to the pi’oceedings by rule, averring that the order attacked can not be assailed unless by petition and citation in nullity or by appeal.
Before the return day of the rule to rescind, the bank filed a petition for executory process, annexing the notes and a copy of the act of mortgage.
*121 On the return day (September 3), after hearing, the court overruled the exceptions and made the rule absolute, rescinding the order of sale obtained by the executrix. On the same day an order for ex-ecutory process was signed by the judge.
The executrix appeals from the decree setting aside the order of sale obtained by her to pay debts.
I.
The bank had a right to proceed by rule to annul the ex parte order of sale. The attack was not collateral, but direct. It was not leveled against any final or definitive judgment, but against an interlocutory decree, which the court might proprio motu have vacated. Such orders can be summarily undone, while final judgments may be annulled only by ordinary proceedings terminating by a definitive judgment. C. P. 604.
The rulings to which the appellant refers have no bearing. They were made in cases in which collateral attacks had been attempted, or executory process had been assailed summarily.
II.
It has been held that mortgage creditors of a succession are entitled to notice of an application made by an executor to sell the property on which their mortgage exists. French vs. Prieur, 6 R. 299. Particularly when the mortgage ranks first on the property, and the mortgage creditor complains before the day of sale. It may be different if he allow the property to be .sold.
It appears that the order of sale was made six days after the appointment of the executrix and more than a month before the return of the inventory into the court; but on these irregularities it is unnecessary to pass, however true it may be, that, before a court should order a sale of the immovable property of a succession, it should wait for the return of the inventory to know what are the assets of the succession, and until thirty days have elapsed since the appointment of an executrix, who in this regard may be assimilated to an administratrix or to a curatrix and is governed by the will and the law, while the other officials are governed by the law alone.
The rights and privileges which an act of mortgage duly recorded, containing the pact de non alienando, as does that in the instant case, secures to the creditor are important.
*122 Under it he has the right to proceed at the maturity and non-payment of his claim against the property in whatsoever hands found, even against a succession; he can have it seized and sold free from any subsequent encumbrance and the sheriff and he are entitled to retain the price without giving security should he purchase, or to receive from it the amount accruing to him on his claim, without delay.
Were the order of sale obtained and the executrix not obstructed, it would deprive the mortgage creditor of the right to proceed via executiva and have the property sold for cash and without appraisement by the sheriff, all appraisement having been waived by the mortgagor in this case, and in case of purchase he would not have the right to retain the price without giving security.
The proceeds of sale, cash and notes, would go into the hands of the executrix of the deceased, who could not make any distribution of funds unless after the rendition and final homologation of an account and tableau; thus putting the creditor to avoidable delay.
While there exists no doubt that, as a rule, all the property which a person dies owning becomes subject to the jurisdiction of the Probate Court for the benefit of creditors and heirs, it is equally true, that such jurisdiction is not so absolute as to strip the mortgage creditors of the deceased of the right of proceeding summarily against such of said property as may have been affected to them, to satisfy some money claim, unless it is shown that such creditor has directly or indirectly relinquished the same, and has submitted entirely to the probate jurisdiction over the mortgaged property.
Neither can there be any doubt, that, where a creditor fails to apply within reasonable delay for executory process and the Probate Court assumes jurisdiction over the property, and on proper proceed-dings directs the sale, the creditor would be estopped by his laches from subsequently questioning the order of sale, so as to press a claim for executory process against it.
In cases of acquiescement, express or implied, or of laches, his only remedy would be to apply for a modification of the terms of sale, when not cash, if those fixed infringed on his pre-existing right to different conditions.
The cases to which the counsel of appellant refers, show that the creditor, having either formally or inferentially, or by his laches in *123 some way, aquiesced in the probate jurisdiction, he was not permitted afterward, to resort to executory process.
By reference to the act of mortgage, it appears that the bank had the right to have the property sold without appraisement. As the debt was due and exigible the bank could, besides, have had the sale made for cash.
Were the order attacked permitted to be executed, the sale could not take place unless the property was bid upon for at least two-thirds of its appraisement in the inventory, and eyen then the purchaser could not be held to pay in ready money the amount of adjudication, the terms fixed by the court and announced in the advertisements being part cash and part at one and two years.
The bank is not chargeable with any fatal omission or commission, from which it can be inferred that it has consented that the jurisdiction of the probate court should attach, and that the court could direct the sale of the property at the instance of the executrix.
No intervention is shown by the bank in the mortuaria, except to protest, and it does not appear that the bank was dilatory in the revendication of its right to executory process.
The order of sale complained was obtained with unusual irregularity and haste, twelve days after the death of the debtor, more than a month before the return of the inventory, some eight days after the appointment of the executrix, and without notice to the creditor.
The debt due the bank, as holder and pledgee of the notes of the deceased, had matured quite shortly, in June and July, before the death of the debtor, which occurred as stated, early in August.
Praying for executory process, on the 30th of August, in the same month in' which the debtor died, was seasonably enforcing the right to executory proceeding. The creditor could hardly have proved more diligent.
Besides, the pact de non alienando which the contract contains is an important factor in this matter. It secures expressly the mortgagee and any holder of the notes, notwithstanding any transfer or encumbrance of the property by the mortgagor, to his injury, and it relieves him eventually from the vexations of an hypothecary action.
Surely, that which such mortgage creditor would have done, even as against a third possessor, he had the right to do against the mortgagor, or his succession, however represented, for it is clear as daylight that neither his creditors nor his heirs could, by his death, *124 have acquired greater rights, privileges, or immunities, than he himself possessed, and which were cut off by express stipulation in the contract. How then can it be claimed, with any plausibility, that the executrix, by her ex parte action in the matter, could have and has stripped the mortgage creditor of the right of resorting to executory proceedings, when the mortgagor himself, had he lived, could not have done so? A mere statement refutes the pretension.
The mortgage creditor has an interest in having the property sold ■separately from the other property of the succession through the .sheriff, so as to receive the proceeds without unnecessary delay, .avoid succession costs, commission of executrix, auctioneers’ and .attorneys’ fees, etc., and the filing and homologation of an account, or tableau of distribution.
It is clear that, as the bank had the right to require a sale for cash and without appraisement, and had done no act from which it can be deduced that it has abandoned that right, and as the order assailed proposes to sell the property subject to the appraisement and on terms which are not cash, the bank had a right to complain and to .ask a rescission of the order as concerned the property, the more so as it received no notice of the application of .the executrix, which was made and granted altogether ex parte.
It will not do to say that if the terms did not suit the bank it should have intervened and sought a modification of them to cash.
The right of the bank, under the pact de non alienando to proceed via exeeutiva, not having been in any way abandoned, and the petition for executory process having been filed seasonably, must be recognized and enforced.
No case is found in the books presenting the characteristics of the instant one, in which the right of the mortgage creditor, whose contract contained the pact de non alienando, was denied the right to proceed via exeeutiva against a succession under similar circumstances.
Considering that the judgment appealed from rescinds the order of sale only so far as concerns the property mortgaged to the bank, it is affirmed with costs.